IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| FIRST BUSINESS BANK, successor by merger to ALTERRA BANK,<br><br>Plaintiff,<br><br>vs.<br><br>FTI WHOLESALE, INC.,<br>Serve: CSC-Lawyers Inc. Service Co.,<br>     Registered Agent<br>     221 Bolivar Street<br>     Jefferson City, MO 65101<br><br>THE SMARTER MERCHANT<br>Serve: CT Lien Solutions, Agent<br>     P.O. Box 3248<br>     Houston, TX 77253-3248<br><br>MERCHANT CASH AND CAPITAL, LLC<br>Serve: CSC-Lawyers Inc. Service Co.,<br>     221 Bolivar Street<br>     Jefferson City, MO 65101<br><br>Defendants. | Case No. _____ |

## COMPLAINT

Plaintiff First Business Bank, successor by merger to Alterra Bank (the "Bank") files its Complaint against Defendant FTI Wholesale, Inc., stating and alleging as follows:

### PARTIES, JURISDICTION, AND VENUE

1.    The Bank is a Wisconsin banking corporation with its principal place of business in Leawood, Kansas.

2.    Defendant FTI Wholesale, Inc. is a corporation organized and existing under the laws of the State of Missouri with its principal place of business located at 620 E. Linwood, Blvd., Kansas City, Missouri 64109. Defendant may be served with process through its

1

registered agent: CSC-Lawyers Incorporating Service Co., 221 Bolivar Street, Jefferson City, Missouri 65101.

3. Defendant The Smarter Merchant is a New York company with its principal place of business at 1115 Broadway, 12th Floor, New York, NY 10010. Defendant The Smarter Merchant may be served with process through its agent, CT Lien Solutions, 2727 Allen Parkway, Suite 1000, Houston, TX 77019.

4. Defendant Merchant Cash and Capital LLC is a limited liability company organized and existing under the laws of the State of New Jersey with its principal place of business at 101 Hudson Street, 33rd Floor, Jersey City, NJ 07302. Defendant Merchant Cash may be served with process through its agent, CSC-Lawyers Incorporating Service Co., 221 Bolivar Street, Jefferson City, Missouri 65101.

5. For purposes of diversity of citizenship, the Bank is deemed to be a citizen of Wisconsin and Kansas.

6. Defendant FTI Wholesale is a Missouri corporation with its principal place of business in Missouri. Defendant The Smarter Merchant is a corporation with its principal place of business in New York.

7. Jurisdiction in this action is proper pursuant to 28 U.S.C. § 1332, as the matter in controversy exceeds $75,000, and because the Bank, on the one hand, and Defendants, on the other hand, are citizens of different states.

8. Venue in this action is proper: (a) pursuant to 28 U.S.C. § 1391(b)(1) because it is brought where Defendant conducts its business, owns property that is the subject of this action, and/or reside and therefore Defendant is subject to the Court's personal jurisdiction; and (b) pursuant 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise

to the claims set forth herein occurred in this District and the principal assets at issue, are located in this District.

## FACTS COMMON TO ALL COUNTS

### Loan 9100371

9. On or about November 7, 2014, and in exchange for a loan in the original principal amount of $711,700 ("Loan 371") Defendant FTI Wholesale, Inc. ("Borrower") executed and delivered to the Bank a promissory note ("Note 371") promising to repay Loan 371 based on the terms and conditions set forth in Note 371. A true and correct copy of Note 371 is attached hereto and incorporated herein as Exhibit 1.

10. Additional terms and conditions governing repayment of Loan 371 were set forth in a Business Loan Agreement dated November 7, 2014, and executed by Borrower and the Bank (the "Loan 371 Agreement"). A true and correct copy of the Loan 371 Agreement is attached hereto and incorporated herein as Exhibit 2.

11. To secure its repayment and performance obligations under Note 371 and the Loan 371 Agreement, Borrower executed and delivered to the Bank a Commercial Security Agreement (the "Loan 371 Security Agreement") dated November 7, 2014. A true and correct copy of the Loan 371 Security Agreement is attached hereto and incorporated herein as Exhibit 3.

12. The Loan 371 Security Agreement granted the Bank a lien in all of the assets set forth therein (the "Loan 371 Collateral").

13. Note 371, the Loan 371 Agreement, and the Loan 371 Security Agreement, are collectively referred to as the "Loan 371 Documents".

### Loan 9100372

14.     On or about November 7, 2014, and in exchange for a loan in the original principal amount of $400,000 ("Loan 372") Borrower executed and delivered to the Bank a promissory note ("Note 372") promising to repay Loan 372 based on the terms and conditions set forth in Note 372. A true and correct copy of Note 372 is attached hereto and incorporated herein as Exhibit 4.

15.     To secure its repayment and performance obligations under Note 372, Borrower executed and delivered to the Bank a Commercial Security Agreement (the "Loan 372 Security Agreement") dated November 7, 2014. A true and correct copy of the Loan 372 Security Agreement is attached hereto and incorporated herein as Exhibit 5.

16.     The Loan 372 Security Agreement granted the Bank a lien in all of the assets set forth therein (the "Loan 372 Collateral").

17.     On December 11, 2015, Borrower executed and delivered to the Bank a Change in Terms Agreement (the "Loan 372 CTA") which increased the principal of Loan 372 to $600,000. A true and correct copy of the Loan 372 CTA is attached hereto and incorporated herein as Exhibit 6.

18.     Note 372, the Loan 372 Security Agreement, and the Loan 372 CTA are collectively referred to as the "Loan 372 Documents".

### Loan 9100791

19.     On or about December 11, 2015, and in exchange for a loan in the original principal amount of $400,000 ("Loan 791") Borrower executed and delivered to the Bank a promissory note ("Note 791") promising to repay Loan 791 based on the terms and conditions set forth in Note 791. A true and correct copy of Note 791 is attached hereto and incorporated herein as Exhibit 7.

4

20. To secure its repayment and performance obligations under Note 791, Borrower executed and delivered to the Bank a Commercial Security Agreement (the "Loan 791 Security Agreement") dated December 11, 2015. A true and correct copy of the Loan 791 Security Agreement is attached hereto and incorporated herein as Exhibit 8.

21. The Loan 791 Security Agreement granted the Bank a lien in all of the assets set forth therein (the "Loan 791 Collateral").

22. Note 791, and the Loan 791 Security Agreement are collectively referred to as the "Loan 791 Documents".

23. Note 371, Note 372, and Note 791 are collectively referred to as the "Notes".

24. The Loan 371 Security Agreement, the Loan 372 Security Agreement, and the Loan 791 Security Agreement are collectively referred to as the "Security Agreements".

25. The Loan 371 Collateral, the Loan 372 Collateral, and the Loan 791 Collateral are collectively referred to as the "Collateral".

26. The Collateral as described in the Security Agreements includes all Borrower's vehicles, inventory, accounts, general intangibles, instruments, rents, monies, payments, proceeds, records and data related to any of the Collateral,

27. The Notes, Security Agreements, and all other related documents not expressly referenced herein are collectively referred to as the "Loan Documents".

## Events of Default

28. Beginning in 2017, Borrower went into default of its obligations under the Loan Documents for, among other reasons, failing to make payment when due.

29. On February 7, 2017, counsel for the Bank sent a Notice of Default and Acceleration of Indebtedness to Borrower. A true and correct copy of the February 7, 2017, notice letter is attached hereto as Exhibit 9.

5

30. Following receipt of the notice letter, Borrower and the Bank attempted to work toward a mutual resolution of Borrower's defaults, but such resolution could not be reached.

31. Borrower continues to be in default of their obligations under the Loan Documents for, among other reasons, the failure to make payment when due.

32. As of July 18, 2018, the following amounts are due and owing under the Loan Documents:

   a. For Loan 371: $598,008.36 in principal; $72,074.09 in accrued, unpaid interest; $8,259.89 in late charges and other fees; plus future interest accruing at a rate of $126.97 per diem; plus costs and fees including reasonable attorneys' fees (the "Loan 371 Indebtedness");

   b. For Loan 372: $599,619.45 in principal; $68,968.40 in accrued, unpaid interest; plus future interest accruing a rate of $119.16 per diem; plus costs and fees including reasonable attorneys' fees (the "Loan 372 Indebtedness"); and

   c. For Loan 791: $377,204.66 in principal; $44,866.69 in accrued, unpaid interest; $5,204.03 in late fees; plus future interest accruing at a rate of $80.09 per diem; plus costs and fees including reasonable attorneys' fees (the "Loan 791 Indebtedness").

## COUNT I: SUIT ON NOTES

33. The Bank hereby incorporates paragraphs 1 through 32 above as though fully set forth herein.

34. Under the terms of the Loan Documents, Borrower is obligated to perform all terms and conditions set forth in those documents including, but not limited to, making all payments due and owing under the Notes.

6

35. The Loan Documents provide that the failure by Borrower to pay any amounts when due under the Loan Documents is an automatic default with no right to cure.

36. Upon an event of default, the Bank is entitled to demand payment in full of the entire unpaid balance of the Loans together with all accrued interest, plus future interest at the default rate.

37. As set forth in the default notice, Borrower is in default of its obligations under the Loan Documents for the failure to make timely payments when due.

38. As of July 18, 2018, the amount owing under the Loan Documents is as follows (collectively, the "Indebtedness"):

    a. For Loan 371: $598,008.36 in principal; $72,074.09 in accrued, unpaid interest; $8,259.89 in late charges and other fees; plus future interest accruing at a rate of $126.97 per diem; plus costs and fees including reasonable attorneys' fees;

    b. For Loan 372: $599,619.45 in principal; $68,968.40 in accrued, unpaid interest; plus future interest accruing a rate of $119.16 per diem; plus costs and fees including reasonable attorneys' fees; and

    c. For Loan 791: $377,204.66 in principal; $44,866.69 in accrued, unpaid interest; $5,204.03 in late fees; plus future interest accruing at a rate of $80.09 per diem; plus costs and fees including reasonable attorneys' fees.

39. The Bank has been damaged in the amount of the Indebtedness as a direct and proximate result of the default set forth herein.

WHEREFORE, the Bank prays for judgment against FTI Wholesale, Inc. in the following sums:

a. For Loan 371: $598,008.36 in principal; $72,074.09 in accrued, unpaid interest; $8,259.89 in late charges and other fees; plus future interest accruing at a rate of $126.97 per diem; plus costs and fees including reasonable attorneys' fees;

b. For Loan 372: $599,619.45 in principal; $68,968.40 in accrued, unpaid interest; plus future interest accruing a rate of $119.16 per diem; plus costs and fees including reasonable attorneys' fees; and

c. For Loan 791: $377,204.66 in principal; $44,866.69 in accrued, unpaid interest; $5,204.03 in late fees; plus future interest accruing at a rate of $80.09 per diem; plus costs and fees including reasonable attorneys' fees.

Plus future costs and attorneys' fees permitted under the loan documents, and applicable law, which continue to accrue, and granting such other and further relief as is just.

## COUNT II: SPECIFIC PERFORMANCE – APPOINTMENT OF RECEIVER

40. The Bank hereby incorporates paragraphs 1 through 39 above as though fully set forth therein.

41. Borrower is in default under the Loan Documents.

42. Pursuant to the Security Agreements, in the event of default:

> Lender shall of the right to have a receiver appointed to take possession of all or any part of the Collateral, with the power to protect and preserve the Collateral, to operate the Collateral preceding foreclosure or sale, and to collect the rents from the Collateral and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Collateral exceeds the Indebtedness by a substantial amount.

*See e.g.* Ex. 3 at p. 4.

43. Thus, based on the defaults, the Bank is entitled to the appointment of a receiver for the Collateral as a matter of right.

8

Case 4:18-cv-00578-FJG   Document 1   Filed 07/26/18   Page 8 of 10

44. The Court has the power to appoint a receiver in this situation pursuant to Fed. R. Civ. P. 66 and 28 U.S.C. § 959(b). In addition, under federal law, the receiver has the power to sell the Collateral if necessary. *See* 28 U.S.C. §§ 959(b), 2001-2004.

45. The Bank has an immediate special interest and right to the Collateral.

46. Defendant The Smarter Merchant is named as a defendant herein by virtue of that UCC financing statement filed with the Missouri Secretary of State's office on February 27, 2017, at File Number 1702278406255 which purports to assert a lien in part of the property constituting the Bank's Collateral. As such, The Smarter Merchant's rights may be impacted by this receivership.

47. Defendant Merchant Cash and Capital, LLC is named as a defendant herein by virtue of UCC financing statements filed with the Missouri Secretary of State's office including filings on (a) February 5, 2016, at File Number 1602056606279; (b) October 25, 2016, at File Number 1610257847643; (c) February 15, 2017, at File Number 1702158364371, all of which purport to assert a lien in part of the property constituting the Bank's Collateral. As such, Merchant Cash and Capital's rights may be impacted by this receivership.

48. The appointment of a receiver is necessary to take immediate possession and control of the Property for the following purposes: (a) to protect the Bank's lien and security interest and prevent imminent and irreparable harm; (b) to perform an accounting of all costs and expenses incurred in maintenance and operation of the Collateral; (c) to insure that all costs and expenses incurred in the operation of the Collateral are paid in the ordinary course of business; (d) to insure that profits and proceeds are timely collected; (e) to ensure that the Bank receives the property and collateral to which it is entitled; and (f) to protect the Collateral from further waste and loss of income.

WHEREFORE, First Business Bank prays that in accordance with the provisions of the Loan Documents and as provided by law, the Court enter an order (a) appointing a receiver (the "Receiver") who will take possession and control of the Collateral, (b) granting the Receiver the powers and duties set forth in the form or order attached to the Motion to Appoint Receiver filed contemporaneously herewith, and (c) granting such other and further relief as is just.

Dated this 26th day of July, 2018.

STINSON LEONARD STREET LLP

/s/ Andrew W. Muller
Andrew W. Muller, MO #53861
1201 Walnut Street, Suite 2900
Kansas City, MO 64106
(816) 691-3198 – Telephone
(816) 412-8124 – Facsimile
Andrew.muller@stinson.com

ATTORNEYS FOR FIRST BUSINESS BANK, successor by merger to ALTERRA BANK